LOPES V ORACLE CORPORATION, ET AL

DEFENDANTS' NOTICE OF REMOVAL PURSUANT
TO 28 U.S.C. §  1332

# EXHIBIT A

Filed
May 24, 2021
Clerk of the Court
Superior Court of CA
County of Santa Clara
20CV368876
By: raragon

Cornelius Lopes
6251 Quartz Place, Newark, CA. 94560
corneliuslopes@gmail.com

*Plaintiff pro se,*

Superior Court of California

*County of Santa Clara*

Case: 20CV368876

First Amended Complaint

Cornelius Lopes

*Plaintiff,*

*v.*

Oracle Corporation, James Sharum

Defendant,

**Introduction**

This case arises out of privacy, misappropriation, discrimination in the workplace, as well as, defendants Oracle Corporation and James Sharum uttered words and email that defamed the plaintiff. what is explicitly stated as well as what insinuation and implication can be reasonably drawn from the communication and the defendant to cause injury to the plaintiff or despicable conduct which is carried on by the defendant with a willful and conscious disregard of the rights or safety of others. The defendants misrepresentation, deceit, or concealment of a material fact as to why he fired the plaintiff was known to the defendant with the intention on the part of the defendant of thereby depriving a plaintiff of property or legal rights or otherwise causing his injuries. The termination and James' spoke

to a potential employer who offered a job to the plaintiff upon a referral from his former manager. James spoke to the man and based on that conversation and the wrongful termination elements show of actual fraud, whether as the basis of the remedy in contract or tort, are: (1) a false representation or concealment of a material fact susceptible of knowledge, (2) made with knowledge of its falsity or without sufficient knowledge on the subject to warrant a representation, (3) with intent to induce the person to whom it is made to act upon it; and such person (4) must act in reliance upon the representation (5) to his damage. Plus, the plaintiff was not paid his bonuses that Oracle and James refuses to pay his just debts, the same is not true of refusal to pay the debt of another, at least in the absence of a showing that such debt was the responsibility of the one refusing to pay it.

The defendants James Sharum and Oracle Corporation violated section 7 & 8 (a)(1) Section 7 of the National Labor Relations Act (the Act) guarantees employees "the right to self-organization, to form, join, or assist labor organizations, to bargain collectively through representatives of their own choosing, and to engage in other concerted activities for the purpose of collective bargaining or other mutual aid or protection," as well as the right "to refrain from any or all such activities."

The defendants James Sharum and Oracle Corporation defamed the plaintiff and their words uttered out verbally and in emails proved the words themselves and their communication to a third person were false, defamatory words and the special damages are reasonable in light of the words spoken, Davis v, R.K.O Radio Pictures, 191, F.2d. 901 (8th cir. 1951 Grice v. Holk, 268 Ala, 108 (1959). These complaints are of privacy, misappropriation of plaintiff's name or picture which has caused unfair competition, conversation, or restitution. Plaintiff's tort claim is that the was economic value in each article, post online or social media which was untrue and used by the defendants without permission. The second is the plaintiff has the right to control my name and picture. The gist of these complaints are privacy cases a direct wrong of personal character resulting in injury to feelings without regard to any effect which the publication may have on the plaintiff's ability to pay property expenses, business interests or the plaintiff's individual

stand in the community. The plaintiff's right to privacy concerns one of peace of mind while the right of freedom from defamation concerns primarily on the plaintiff reputation. The plaintiff's injury is mental and subjective. Plaintiff finds the holding in Fellows v. National Enquirer, Inc. (1986) 42 Cal.3d 234 which states Under Civil Code section 45a, language that is defamatory only by reference to extrinsic facts is not actionable unless the plaintiff can prove special damages. Defined in Civil Code section 48a as damages to property, business, or occupation. section 45a applies when a defamatory publication gives rise to an action for false light invasion of privacy rather than libel.

The facts of the case are, in November 2016 the plaintiff was a Business Development Representative known as BDC. He applied for a position of Account Sales Representative, known as ASR within the Oracle's sales organization. During the interview, the defendant James Sharum stated he had one opportunity on his team and it was managing higher educational account; the position had been open a year he was looking to hire the right person. The plaintiff submitted two Oracle references who were Regional Managers and a recommendation from his current manager. Upon joining the Team within two weeks defendant Sharum was conducting three interviews for three more open positions the defendant had on his team. Plaintiff inquired why he had the territory that had no revenue in two years if he had other open positions; the defendant replied, " I felt you are more qualified for the ASR role I had available". Knowing how tough the patch or territory was the plaintiff had a conversation with my HR manager Joelle Lin[illegible] who stated to the plaintiff, "the managers hire for the appropriate roles." In February 2017, two of my associates Melody Wang and Mason Hennigan who were hired after me hit their quota numbers for the entire year. The sales team's quotas are from June to July, so Mason and Melody worked 3 to 3-1/2 months and they hit their individual sales quotas. The issue here is of discrimination in hiring and the workplace. Although the plaintiff was hired within Oracle, for any interview to get another position at Oracle there is a new hiring process one must go through, three interview two with James one with a team member. There's the referrals and prior work reviews; as well as goals in meeting prior sales quotas must be archived to be proven not to mention the competition from the other applicants James is interviewing. The defendant told the plaintiff he had one open position and over the course of two months after being hired on James team,

James hired three more people who had financially better patches or territories. Melody and Mason both were hired after me and because successful not on their abilities, but they were given the sales opportunities by James.

My sales quota was about $350,000 to $380,000 and as a ASR my roles was inside sales as was my associates. As an ASR you are responsible for achieving your sales quota while working in your assigned sales territory. As ASR's we had field representatives who typically worked in the states in which they lived. I worded with Ned Steinke he was the outside sales representative who I communicated with weekly and jointly we I would follow up on his leads and create my own. When Ned would make a sale, a percentage would go towards my commission; as well as, reliving my sales quota a certain dollar amount.

In December 2016 through March of 2017 the plaintiff sent James Sharum and Ned Steinke a series of emails outlining with screenshots gathered from Oracle Sales Cloud that the current pipeline Ned Steinke has in his Microsoft Excel spread sheet (attached exhibit A and B) it has five opportunities associated within the excel form. I sent James and Ned email and screenshots of Opportunity #'s are 59JXD, 5LCDY, 5BFN6, 57N5M and 3H8JK that have been closed for five months by other assigned ERP and Garret the ASR who had the role before me. Similarly, in Sauers v. Salt Lake County, 1 F.3d 1122, 1128 (10th Cir. 1993), there the employer testified, she fired the plaintiff because she thought he was going to file a complaint.

What the plaintiff found through Sales Cloud Audit Trail in each opportunity mentioned above is that Opportunities College of Lake County # 5LCDY, DePauw University #5BFN6 and Indiana University #59JXD, Moody Bible #3H8JK and Indiana University #59JXD were all closed months ago by other sales people. Ned was claiming he is working these Opportunities and of course each of these opportunities the plaintiff believed his filed Ned Steinke is working and progressing to close. This information is being rolled up to the plaintiff and the BDC managers, their VP's on potential opportunities and eventually what Oracle reports to investors on a quarterly basis of current HCM pipeline. When the plaintiff would consistently ask his manager to talk to James director about this, James would refer to the quiet period during the weeks prior to Oracle releasing its quarterly earnings. As a company he would tell the plaintiff we were not

supposed to talk about it on the floor due to calls being made on the floor; so James was always pushing back when he *would have* in-depth conversation with his manager. These five bogus and fraudulent opportunities appeared in my [illegible] to Oracle Management, written on my weekly Sales Call Sheets, email to James [illegible] deals being progressed by my field and in 1 on 1 conversations of opportunities being progressed quarterly. ( Exhibit 8 )

Q2/Q3 KDRs & Q4 Snapshot
HCM Upmarket
Strategic Accounts, East
ORACLE

# Territory Targets

## Who are your On Premise (License) customers?

** Be prepared to discuss past activity and go forward plans to transition them to Cloud **

*Indiana State University*

*Anderson College*

*University of Saint Francis (Indiana)*

*University of Chicago*

*Rosalind Franklin University of Medicine and Science*

*Mc Kendree University*

*Kellogg Community College*

*College Du Page*

*Holy Cross College*

## Who are your Cross Pillar Cloud Installs?

** Be prepared to discuss past activity, go forward plans to position HCM Cloud products, and Cross-Pillar strategy with your counterparts. Demonstrate that you can articulate the value of ERP/HCM **

*College of Lake County*

*Loyola University of Chicago*

*The Moody Bible Institute of Chicago*

*Northern Illinois University*

*Purdue University*

## Who are your Top 10 Greenfield Target Accounts?

**Be prepared to discuss who, why, and the plan to attack each one**

*Ball State University*

*Illinois Institute of Technology*

*Eastern Illinois University*

*Franklin College of Indiana*

*Land of Lake College*

*American Library Association*

*Indiana Wesleyan University*

*University of Michigan*

*Heartland Community College*

*Golden State Overnight*

ORACLE

# FY18 Quota & Pipeline Analysis

| | Q1 (11%) | Q2 (16%) | Q3 (23%) | Q4 (50%) | FY17 |
|---|---|---|---|---|---|
| BCO Quota | $ 48,400 | $ 70,400 | $ 101,200 | $ 220,000 | $ 440,000 |
| Forecast (Call/Commit) | $ 125,000 | $ 113,956 | $ 275,117 | $ 150,000 | $ 664,073 |
| Actual ARR Closed | $ 97,500 | $ - | $ - | $ - | $ 97,500 |
| Current Pipe (40%+) | | $ 113,956 | $ 275,117 | $ - | $ 389,073 |
| Current Pipe (10%-30%) | | $ - | $ - | $ 220,000 | $ 220,000 |
| Total Pipe (10%+) | | $ 113,956 | $ 275,117 | $ 220,000 | $ 609,073 |
| Target Pipeline (5x) | | $ 352,000 | $ 506,000 | $ 1,100,000 | $ 1,712,500 |
| Pipeline Gap | | $ 238,044 | $ 230,883 | $ 880,000 | $ 1,103,427 |

**Exclude all Split Deal BCO pipeline in numbers above



## FY18 Quota & Pipeline Analysis

| | Q1 (11%) | | Q2 (16%) | | Q3 (23%) | | Q4 (50%) | | FY17 | |
|---|---|---|---|---|---|---|---|---|---|---|
| BCQ Quota | $ | 48 400 | $ | 70,400 | $ | 101,200 | $ | 220,000 | $ | 440,000 |
| Forecast (Call/Commit) | $ | 125,000 | $ | 113,956 | $ | 275,117 | $ | 150,000 | $ | 664,073 |
| Actual ARR Closed | $ | 97,500 | $ | | $ | - | $ | - | $ | 97,500 |
| Current Pipe (40%+) | | | $ | 113,956 | $ | 275,117 | $ | | $ | 389,073 |
| Current Pipe (10%-30%) | | | $ | - | $ | - | $ | 220,000 | $ | 220,000 |
| Total Pipe (10%+) | | | $ | 113,956 | $ | 275,117 | $ | 220,000 | $ | 609,073 |
| Target Pipeline (5x) | | | $ | 352,000 | $ | 506,000 | $ | 1,100,000 | $ | 1,712,500 |
| Pipeline [illegible] | | | $ | 238,044 | $ | 230,883 | $ | 880,000 | $ | [illegible] |

ORACLE

Plaintiff sent emails with screen shots from each opportunist's audit trials that show the opportunities Ned Steinke listed have been closed prior to plaintiff joining James Sharums team which was in November 2016. So, Ned have been putting in false information into Sales Cloud three months prior to plaintiff joining and when the plaintiff emailed James and Ned in December 2016, James did not take any action on this.

On November 17, 2017 plaintiff was put on *Performance Improvement Plan* by my manager James Sharum, he stated my performance was the issue and I let him know this was retaliation for me complaining and I then reported my concerns to his manager I was being retaliated against due to my documentation of fraud and it was under his watch. (Exhibit C)

Date: 11/17/2017
To: Cornelius Lopes
From: James Sharum
Re: *Performance Improvement Plan*

Cornelius,

As you are aware we met back on 11/9/17 and again today to discuss your performance in your role as an Application Sales Representative in Oracle Digital UM HCM. To better support you and continue to work towards performing the job duties for your role we are implementing a performance improvement plan. The plan is set in place so that both of us have a clear understanding of what objectives need to be met and where progress is needed. The specific areas that we need continued focus on are as follows:

- Inability to connect and engage with your virtual team resources.
- *Several missed deadlines for deliverables*
- Lack of clarity in communication around strategy and deal progression in presentations and *correspondence*
- Difficulty in coordinating multiple activities.
- Transactional and Revenue participation is low
- Campaigns are not hitting pipeline targets

In addition to the original set of criteria we were focused on I also want you to be paying better attention to detail in the material that you create and deliver.

We have been focused on these areas of improvement for most of this fiscal year and need to continue monitoring and working towards significant and sustained progress in these areas. We will be moving forward with the following action plan.

- Weekly Activity Report and Check Point (template provided by me) – Sent by you by COB on the day of our 1 on 1 meetings (Thursday 10AM) with status update by Monday COB
- Increased engagement to establish trust and build relationship with your virtual teams to establish yourself as a strategic resource in the territory. Include how you are engaging in your weekly activity report. I will continue to ask to be included on cadence calls to measure this.
- On time delivery of all requested Activity Reports and other deliverables required for successful participation in ASR role
- Be responsive to communication within working hours. I expect to see response from you within 24 hours with a detailed response not just a note that you received my communication.
- Quality thought and review of your own territory management plan and deal progression action items to ensure you are able to execute on this on your own rather than relying on rework by myself or team members.

Cornelius, I am still hopeful we can resolve these issues and I am available at any time should you need further information or guidance. We will meet regularly to discuss your progress against the above action plan. Failure to correct the issues we've discussed could subject you to further disciplinary action up to and including termination. Such action may be taken at any time during this plan or in the future as necessary.

Please note: A copy of this Performance Improvement Plan will be placed in your personnel file.

Regards,

*James Sharum*

cc: Human Resources

On November 28th the plaintiff sold an Oracle product to Purdue University sales quota number CPQ-633895 for $46,800.00; it was Human Capital Management software, #B84259 Oracle Taleo Archive Environment. I am due a quota check for

this was I never got it this claim is to be reimbursed for the commissions I did not receive. James sent an email confirming my claim it was sent to myhlpsupport on March 26, 2018 at 9:16am regarding reference # 180322-003858 Canada SS... updated. This was to assure I got credit for the sales and the email says, "Team, I am not sure what Cost Center you are referring to. I have provided all information I have access to regarding Cost Center." (Exhibits D)

AT&T LTE 12:28 PM

From:

To:

Cc:

**RE: Reference #: 180322-003858 - Canada Stripe is updated**

Team,

I am not sure what Cost Center you are referring to.

I have provided all information I have access to regarding Cost Center.

Thanks,
James

James Sharum | Oracle Digital | Regional Sales Manager | HCM Solutions
Office: 650.506.5651 | Mobile: 916.956.3484

**From:** MyHelp Support [mailto:myhelp_support@oracle.com]
**Sent:** Monday, March 26, 2018 9:04 AM
**To:** James Sharum <james.sharum@oracle.com>
**Subject:** Reference #: 180322-003858 - Canada Stripe is updated

On February 11, 2018 I had an onside demonstration for Oracle Human Capital Management software, the services were time and labor, human capital platform and employee wellness; the quote number is CPQ-719281 for $342,000. This demo consisted of myself and three Oracle salespersons assisting in the demo and James was one of them. After the demo Asus Computer signed a contract with the intent to buy, they need to get a PO from the corporate office on Asia. My case is similar to, Anderson, 477 U.S. at 252 (to defeat summary judgment, "[t]he mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff. The judge's inquiry, therefore, unavoidably asks whether reasonable jurors could find by a preponderance of the evidence that the plaintiff is entitled to a verdict in his favor. (Exhibits E)

12:27 PM
cpqap.bigmachines.com

In February 2018 I had a sales opportunity open for Huawei Technologies in Canada. It was for TBE Base platform and TBE recruiting Cloud, it was for $15,667.00 I am never received commission on this sale, this complaint addresses the need to be reimbursed commission for this sale. On Saturday March 24th 2018 while walking outside his home the plaintiff was attached and assaulted by two people. Plaintiff went to Kaiser Hospital in Fremont and a suspicious injury report see below; as well as, the Newark Police visited him in the hospital and created a police report. On March 27th 2018 the plaintiff returned to work and was terminated. The defendant James Sharum told the plaintiff, "you are not being a good fit for Oracle, I wrote you up it was a warning you missed work during this write up and you are not a good fit for my team. " In Time, Inc. v. Hill, 385 U.S. at 387-388, the Court held, "different interest may be involved where purely private liable are concerned." After the call with defendant James the plaintiff called and spoke to the human resources and spoke with Joelle Lindey from human resources about his the concerns about the fraud from Ned Steinke and was told she would schedule a meeting between the three of us, which happened.

(Exhibits F)



INJURY REPORT

INFORMATION DISCLOSURE

Part A: PATIENT WITH SUSPICIOUS INJURY

PHONE AND WRITTEN REPORTS

"Ned Steinke's manipulation of data he put in the Excel Spreadsheet then was put into Oracle Sales Cloud by the plaintiff. In Ned Stenke's Opportunity Data (FY16 Q2-Q4 he lists five opportunities on the spreadsheet he shared with James and the Plaintiff. On the FY16 Q2-Q4 opportunity data spreadsheet is listed on line #23 (Exhibit A) is listed as ASM-Ned Steinke, RM-Mick Johannes, the date is 9/15/2016, the account name is Moody Bible, the account type is listed as existing, opportunity ID is listed as # 3H8Jk , listed as close percentage to close 40% and the ARR/Net total is listed as $245,000.00, Lead Source is listed as field opportunity and the product was Fusion/ Taleo. Line #24 (Exhibit A) has ASM is Ned Steinke, the RM is listed as Mick Johannes the date is 6/15/2016 the account is listed as Indiana University, the account type is existing, the opportunity ID is listed as 57N5M, the percentage to close is 40%, the total is $522,900.00 and the product was Peoplesoft. Line #25 ( exhibit A) is ASM is listed as Ned Steinke the RM is listed as Nick Johannes the date is 7/1/2016 the account name is DePauw University, the opportunity ID is 5BFN6, the close percentage is 40% the ARR/NETL is $171,697.00 and the product was Fusion. Line #26 (Exhibit A) is ASM Ned Steinke and the RM is Mick Johannes, the date is 8/1/2016, the account is College of Lake County, the opportunity ID is 5LCDY the ARR/NETL is $65,000.00 the product was Fusion/ Taleo. Line #27 (Exhibit A) is Ned Steinke, the RM is Mick Johannes the date is 5/25/2015 the accounts at Indiana University the opportunity ID is 59JXD the ARR/NETL was $75,000.00 the product was Peoplesoft.

EXHIBIT A

When the plaintiff bought this fraud to his manager James Sharum he stated, "Ned did not have a manager and He as in James was filling in as that but for the

*Opportunity Data (FY16 Q2-Q4)*

| ASM | RM | Date | QTR | I | Account | Type | OPID | % | ARR/NETL | % | Products | Partner | or | Source | Comp Value |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| [illegible] | [illegible] | [illegible] | 4 | CC/Field | Benedictine University | Existing | [illegible] | 40% | $ 195,000.00 | $ 20.00 | Fusion/Taleo | | - | CC | $ [illegible] |
| | | | | | | | | | | | | | | | $ [illegible] |
| [illegible] | [illegible] | [illegible] | 2 | CC/Field | Moody Bible | Existing | [illegible] | 30% | $ 245,000.00 | 50.00% | Fusion/Taleo | Highstreet | - | CC | $ [illegible] |
| [illegible] | [illegible] | [illegible] | 3 | Field | Indiana University | Existing | 57N5M | 20% | $ 622,900.00 | 35.00% | Peoplesoft | - | - | Field | $ [illegible] |
| [illegible] | [illegible] | [illegible] | 1 | Field | Depauw University | Existing | [illegible] | 20% | $ 171,697.00 | $ 45.00 | Mid-market | TBD | | | $ [illegible] |
| [illegible] | [illegible] | [illegible] | 1 | CC | College of Lake County | Existing | [illegible] | 20% | $ 65,000.00 | $ 45.00 | Fusion/Taleo | TBD | - | CC | $ [illegible] |
| [illegible] | [illegible] | [illegible] | 4 | CC | Indiana University | Existing | [illegible] | 20% | $ 75,000.00 | 0.00% | PeopleSoft ILF | - | | CC | $ [illegible] |
| | | | | | | | | | | | | | | | $ [illegible] |

Exhibit A-2

| | | | | | Sales Process | | | | | | | People Alignment | | | | | Close Process | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| P | o | h | e | v | bapi | Case | IVS | P | C | ? | s | h | O | CIO | O | Sp | ? | JEP | S | A | OO | y | App | Com |
| [illegible] | [illegible] | NA | NA | Y | N | Y | N | NA | N | Y | NA | Y | Y | Y | N | N | Y | Y | N | N | N | FO | Y | |
| [illegible] | [illegible] | NA | NA | Y | N | Y | N | NA | N | Y | NA | Y | Y | Y | N | N | Y | Y | N | N | N | FO | Y | |
| [illegible] | N | Y | Y | N | N | N | N | NA | N | Y | NA | Y | Y | Y | Y | Y | [illegible] | [illegible] | [illegible] | [illegible] | [illegible] | [illegible] | [illegible] | |
| | | NA | NA | N | N | Y | N | NA | N | N | NA | Y | Y | Y | N | N | Y | [illegible] | [illegible] | [illegible] | [illegible] | [illegible] | [illegible] | |

plaintiff to be successful in this role I need to get along with his field representative. The plaintiff was concerned because none of these opportunities were closed and the plaintiff called Frank Leber, VP Information tec... Moody Bible College who told the plaintiff he was not and had not been working with Oracle on any Cloud HR solution and they had PSFT and hadn't been working with Oracle on moving off of the Cloud in several month. The plaintiff then called DePauw and spoke with Amy Houg who stated they purchased a Cloud solution in September. The plaintiff spoke Ned about this several times and as the plaintiff James his manager a series of emails asking what's going on and if we can have a meetings to discuss but James never pushed to find out why Ned did what he did. The emails are over welling evidence that Ned's limited Oracles to penetrate each account for a potential sale but mislead four sales professionals becau... misleads with his Excel document. When the plaintiff spoke to Ned in 2017 about this, he stated it was a mistake and because he had been without a manager for, I believe 7 months he felt it would not get any traction. I continued to press in every 1 on 1 in January because Ned was lying putting information into Sales Cloud, James assured me several times we would get together with Ned's new manager then in December 2017 I was written up by James for not being professional and not being a good fit for the roll and not getting along with Ned.

Plaintiff's written emails outlining Ned's data theft, manipulation of data into Oracle Sales Cloud, lying and clearly an several Oracle Policies. On April 2, 2018 (exhibit H) the plaintiff wrote the HR manager Joelle in that email he stated, " Joelle, I followed all Oracle rules and reported the manipulation of data by Ned but I was the one fired. My question Joelle, can you confirm what I am saying is true and why didn't my manager James take theft of Oracle property and manipulation of data into Oracle Sales Cloud, misleading Oracle Sales Teams ( ASR & BDC'S) of current pipeline opportunists and expecting potential commission revenues. Once you do confirm, can I have my job back, I am a whistle blower I should not have been fired by James even if the Audit Trail show he was the manager in charge of that Sales Territory during the manipulation of data working for Oracle, but I also know I cannot make you look into this. It is my understanding I was terminated because I may not be a good fit for the role if my performance today in the role is an indication of future performance in Q19, Q20 ect. I hope you Joelle and your HR Team can see I am a great Oracle employee

"even when being misled by Ned and not getting support by my manager in this instance I was able to still find and was going to close the three opportunities attached Purdue University, Huawei Technologies Canada and ASUS Computer International al will close in Q4FY18. I have attached thee CPQ's that will close in Q4FY18 and also a screenshot of one month's sales activity. This was an email I sent to the HR department at Oracle after I was fired for Whistleblowing. I was also denied for two years the opportunity to get reimbursed for tuition but everyone else on my team who wanted to attend college classes were given permission to do so but James for two years denied me the right to get reimbursed for college classes . I have been treated different by my manager than he treats others who do similar jobs and I was fired for being a whistleblower."

James put me on a performance improvement plan which is exhibit G. On 11/17/2017 and on 11/28/2017 I sold Perdue University an upgrade see quote# CPQ 633895, this sale was $46,800.00. The opportunity number is 8YDQQ. I need to be compensated for the commissions I did not receive. I was terminated for complaining and it was retaliation by Oracle and James to withhold my commission. MY commission should have been $2340 and with a 30% penalty of $70,200. Oracle owes me $72540.00.

Asus Computers

[illegible]

Quote Information

[illegible]

Hanwa Technologies 1 of 3

Huawei Technologies 263

[illegible]

## [illegible] Information

[illegible] Oracle Cerner ULC

[illegible] North America

[illegible] USD

[illegible] Annually in Advance

[illegible] Monthly

[illegible]

## [illegible] Subscription Information

[illegible] 18684386

[illegible] Annually in Advance

[illegible] USD

[illegible] North America

[illegible] SPM

[illegible]



Draft Quote Created

Huawei Technologies 3/3

Opportunity and Quote

Quote Information

New

James Shanao

OPEN

Existing Subscription

03/16/2018 12:28

No

Up Market

Cloud

Pricing

| Part # | Item | Existing Sub ID | Unit Price | UOM | Existing Subscription Qty | Quantity | List Fee | Term (MO) | Standard Discount % | Unit Selling Price | Net |
|---|---|---|---|---|---|---|---|---|---|---|---|

1 Go to

Exhibit H, I created a quote on 2/11/2018 and had an onsite demo on 3/18/18 with ASUS Computers. James and a person doing the demo was present and we received a verbal that ASUS was going to purchase this product and they did after I was fired. I am not sure what the final contract is but when the records a revealed it will show I sold a product and did not get my commission for the work done. The issue here is the commission and the penalties for not being paid the commission once I left the Oracle.



Exhibit I, I upsold Huawei Technologies on 3/16/2018 for a total of $3,381.72 on Opportunity # 9C3X7 the quote is CPQ 764633 I did not get a commission check for this sale I am suing for $ 321.27 with penalties for not paying me on time $35,5970.00.

Quote Information

NEW

Existing Subscription

No

| Quote Discount Applied | Quote Total Discount Applied |
|---|---|
| $4,[illegible].31 | $4,473.31 |
| $3,381.72 | $3,381.72 |
| $3,381.72 | $3,381.72 |
| $439.62 | |
| $3,821.34 | |

At issue is the plaintiff wrongful termination and defame with defamatory communication the plaintiff because the defendant James Sharum statement

were challenged by the plaintiff with proof of their statements and facts from archived emails?

When, however, the vagueness of plaintiff's facts within the emails sent to James Sharum the manager and Ned Steinke the field representative from December 2016 to March 2017 is coupled with (1) the fact that the plaintiff took step in investigating the three years of sales listed on the excel spreadsheet shared with James and himself to determine whether he was getting a bonuses was intended to reassure himself and his manager the team was successful; (2) the fact that James denied wanting to get involved in the monetary quota that Ned was rep[resenting to be fact even though it turned out to be a lie, is mismanagement and defamatory to the plaintiff. Especially because he was terminated for not fitting in and requesting an investigation into Ned Steinke's fraud. (3) The fact the fact that two accounts listed on Ned Steinke's opportunity data FY16 Q2-Q4 sales opportunity sheet was false. Gubitosi v. Kapica, 154 F.3d 30, 33 (2d Cir. 1998) (evidence of intervening events undermines any inference of retaliatory motive and weakens the causal link); Wu v. Southeast-Atlantic Beverage Corp., 321 F. Supp. 2d 1317, 1337 (N.D. Ga. 2004) ("any inference of retaliatory intent otherwise created by a short lapse of time to be dispelled when intervening factors are. established," collecting cases); see generally Anderson, 477 U.S. at 252.

James Sharum and Joelle Lindey are guilty of wrongful termination and defamation of the plaintiff.

The plaintiff seeks his job back with pay from the time I was terminated to the date of reinstatement. The plaintiff seeks his sales commissions for Asus and Huawei sales made along with waiting penalties.

Plaintiff seeks to have Oracle restate correct earnings to investors for the quarters within the 2016 and 2017 Ned Steinke committed fraud.

Plaintiff states a public apology for a shameful termination of the plaintiff.

Plaintiff seeks damages of $350,000,000 for defamation from each defendants.

The plaintiff wants to be reinstated to his job.

Plaintiff seeks back pay from the time he was terminated to the time the case was filed for a total of $329,040.

Plaintiff is seeking punitive damages in the amount of $2 million dollars.

Cornelius Lopes

05/18/21

SUBP-002

ATTORNEY OR PARTY WITHOUT ATTORNEY (Name, State Bar number, and address): FOR COURT USE ONLY

TELEPHONE NO.: FAX NO.:

E-MAIL ADDRESS:

ATTORNEY FOR (Name):

NAME OF COURT:
STREET ADDRESS:
MAILING ADDRESS:
CITY AND ZIP CODE:
BRANCH NAME:

PLAINTIFF/ PETITIONER:

DEFENDANT/ RESPONDENT:

**CIVIL SUBPOENA (DUCES TECUM) for Personal Appearance and Production of Documents, Electronically Stored Information, and Things at Trial or Hearing and DECLARATION**

CASE NUMBER:

**THE PEOPLE OF THE STATE OF CALIFORNIA, TO** *(name, address, and telephone number of witness, if known)*:

1. **YOU ARE ORDERED TO APPEAR AS A WITNESS** in this action at the date, time, and place shown in the box below **UNLESS** your appearance is excused as indicated in box 3b below or you make an agreement with the person named in item 4 below.

   a. Date: Time: [ ] Dept.: [ ] Div.: [ ] Room:

   b. Address:

2. **IF YOU HAVE BEEN SERVED WITH THIS SUBPOENA AS A CUSTODIAN OF CONSUMER OR EMPLOYEE RECORDS UNDER CODE OF CIVIL PROCEDURE SECTION 1985.3 OR 1985.6 AND A MOTION TO QUASH OR AN OBJECTION HAS BEEN SERVED ON YOU, A COURT ORDER OR AGREEMENT OF THE PARTIES, WITNESSES, AND CONSUMER OR EMPLOYEE AFFECTED MUST BE OBTAINED BEFORE YOU ARE REQUIRED TO PRODUCE CONSUMER OR EMPLOYEE RECORDS.**

3. **YOU ARE** *(item a or b must be checked)*:

   a. [ ] Ordered to appear in person and to produce the records described in the declaration on page two or the attached declaration or affidavit. The personal attendance of the custodian or other qualified witness and the production of the original records are required by this subpoena. The procedure authorized by Evidence Code sections 1560(b), 1561, and 1562 will not be deemed sufficient compliance with this subpoena.

   b. [ ] Not required to appear in person if you produce (i) the records described in the declaration on page two or the attached declaration or affidavit and (ii) a completed declaration of custodian of records in compliance with Evidence Code sections 1560, 1561, 1562, and 1271. (1) Place a copy of the records in an envelope (or other wrapper). Enclose the original declaration of the custodian with the records. Seal the envelope. (2) Attach a copy of this subpoena to the envelope or write on the envelope the case name and number; your name; and the date, time, and place from item 1 (the box above). (3) Place this first envelope in an outer envelope, seal it, and mail it to the clerk of the court at the address in item 1. (4) Mail a copy of your declaration to the attorney or party listed at the top of this form.

4. **IF YOU HAVE ANY QUESTIONS ABOUT THE TIME OR DATE YOU ARE TO APPEAR, OR IF YOU WANT TO BE CERTAIN THAT YOUR PRESENCE IS REQUIRED, CONTACT THE FOLLOWING PERSON BEFORE THE DATE ON WHICH YOU ARE TO APPEAR:**

   a. Name of subpoenaing party or attorney: b. Telephone number:

5. **Witness Fees:** You are entitled to witness fees and mileage actually traveled both ways, as provided by law, if you request them at the time of service. You may request them before your scheduled appearance from the person named in item 4.

**DISOBEDIENCE OF THIS SUBPOENA MAY BE PUNISHED AS CONTEMPT BY THIS COURT. YOU WILL ALSO BE LIABLE FOR THE SUM OF FIVE HUNDRED DOLLARS AND ALL DAMAGES RESULTING FROM YOUR FAILURE TO OBEY.**

Date issued:

(TYPE OR PRINT NAME) (SIGNATURE OF PERSON ISSUING SUBPOENA)

(TITLE)

(Declaration in support of subpoena on reverse)

Form Adopted for Mandatory Use Judicial Council of California SUBP-002 [Rev. January 1, 2012]

**CIVIL SUBPOENA (DUCES TECUM) for Personal Appearance and Production of Documents, Electronically Stored Information, and Things at Trial or Hearing and DECLARATION**

SUBP-002

PLAINTIFF/PETITIONER: [illegible]

DEFENDANT/RESPONDENT: [illegible]

CASE NUMBER: [illegible]

The production of the documents, electronically stored information, or other things sought by the subpoena on page one is supported by (check one):

[ ] the attached affidavit or [X] the following declaration: [illegible]

**DECLARATION IN SUPPORT OF CIVIL SUBPOENA (DUCES TECUM) FOR PERSONAL APPEARANCE AND PRODUCTION OF DOCUMENTS, ELECTRONICALLY STORED INFORMATION, AND THINGS AT TRIAL OR HEARING**
**(Code Civ. Proc., §§ 1985, 1987.5)**

1. I, the undersigned, declare I am the [X] plaintiff [ ] defendant [ ] petitioner [ ] respondent [ ] attorney for *(specify):* [ ] other *(specify):* in the above-entitled action.

2. The witness has possession or control of the documents, electronically stored information, or other things listed below, and shall produce them at the time and place specified in the Civil Subpoena for Personal Appearance and Production of Records at Trial or Hearing on page one of this form *(specify the exact documents or other things to be produced; if electronically stored information is demanded, the form or forms in which each type of information is to be produced may be specified):*

[illegible]

[ ] Continued on Attachment 2.

3. Good cause exists for the production of the documents, electronically stored information, or other things described in paragraph 2 for the following reasons:

[illegible]

[ ] Continued on Attachment 3.

4. The documents, electronically stored information, or other things described in paragraph 2 are material to the issues involved in this case for the following reasons:

[illegible]

[ ] Continued on Attachment 4.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Date:

[illegible]
(TYPE OR PRINT NAME)

[signature]
(SIGNATURE OF [ ] SUBPOENAING PARTY [ ] ATTORNEY FOR SUBPOENAING PARTY)

## Requests for Accommodations

Assistive listening systems, computer-assisted real-time captioning, or sign language interpreter services are available if you ask at least 5 days before the date on which you are to appear. Contact the clerk's office or go to *www.courtinfo.ca.gov/forms* for *Request for Accommodations by Persons With Disabilities and Order* (form MC-410). (Civil Code, § 54.8.)

(Proof of service on page 3)

SUBP-002 [Rev. January 1, 2012]

**CIVIL SUBPOENA (DUCES TECUM) for Personal Appearance and Production of Documents, Electronically Stored Information, and Things at Trial or Hearing and DECLARATION**

Page 2 of 3

SUBP-002

| PLAINTIFF/PETITIONER: | CASE NUMBER: |
|---|---|
| DEFENDANT/RESPONDENT: | |

**PROOF OF SERVICE OF CIVIL SUBPOENA (DUCES TECUM) for Personal Appearance and Production of Documents, Electronically Stored Information, and Things at Trial or Hearing and DECLARATION**

1. I served this *Civil Subpoena (Duces Tecum) for Personal Appearance and Production of Documents, Electronically Stored Information, and Things at Trial or Hearing and Declaration* by personally delivering a copy to the person served as follows:

a. Person served *(name)*:

b. Address where served:

c. Date of delivery:

d. Time of delivery:

e. Witness fees *(check one)*:

(1) [ ] were offered or demanded and paid. Amount: . . . . . . $ ____________

(2) [ ] were not demanded or paid.

f. Fee for service: . . . . . . . . . . . . . . . . $ ____________

2. I received this subpoena for service on *(date)*:

3. Person serving:

a. [ ] Not a registered California process server.

b. [ ] California sheriff or marshal.

c. [ ] Registered California process server.

d. [ ] Employee or independent contractor of a registered California process server.

e. [ ] Exempt from registration under Business and Professions Code section 22350(b).

f. [ ] Registered professional photocopier.

g. [ ] Exempt from registration under Business and Professions Code section 22451.

h. Name, address, telephone number, and, if applicable, county of registration and number:

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Date:

▶ ______________________________
(SIGNATURE)

(For California sheriff or marshal use only)
I certify that the foregoing is true and correct.

Date:

▶ ______________________________
(SIGNATURE)

SUBP-002 [Rev. January 1, 2012]

**CIVIL SUBPOENA (DUCES TECUM) for Personal Appearance and Production of Documents, Electronically Stored Information, and Things at Trial or Hearing and DECLARATION**

Page 3 of 3

For your protection and privacy, please press the Clear This Form button after you have printed the form.

Print this form | Save this form | Clear this form