**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

**SAN JOSE DIVISION**

| | |
|---|---|
| CORNELIUS LOPES,<br><br>    Plaintiff,<br><br>v.<br><br>ORACLE AMERICA, INC., et al.,<br><br>    Defendants. | Case No. 22-cv-01815-BLF<br><br>**ORDER GRANTING MOTION TO COMPEL ARBITRATION AND DISMISSING CASE WITHOUT PREJUDICE**<br><br>[Re: ECF No. 19] |

Now before the Court is a motion to compel arbitration brought by Defendants Oracle America, Inc. ("Oracle") and James Sharum (collectively "Defendants"). ECF No. 19. Defendants argue that Plaintiff Cornelius Lopes must arbitrate his claims because of an arbitration provision in his employment contract. *Id.* Lopes did not file an opposition. The Court vacated its hearing. ECF No. 29. For the following reasons, the Court GRANTS Defendants' motion to compel arbitration.

**I.  BACKGROUND**

Lopes filed this action against Oracle and Sharum, asserting claims for violation of the National Labor Relations Act, defamation, invasion of privacy, discrimination, whistleblower retaliation, and wrongful termination. *See* ECF No. 19-1 Exh. B ("FAC"). These claims arise out of incidents that occurred when Lopes was working at Oracle under Sharum's supervision. *Id.*

Lopes was hired at Oracle in March 2015. ECF No. 19-3 ("Jaeger Decl.") ¶ 7. Defendant Sharum was his supervisor from October 2016 through March 2018, when Lopes's employment was terminated. *Id.* ¶¶ 6-7. As an employee during Fiscal Year 2018 ("FY18"), which ran from June 1, 2017 through May 31, 2018, Lopes participated in the FY18 Oracle Sales Compensation Plan ("FY18 Plan"). ECF No. 19-2 ("Diaz Decl.") ¶ 5. The FY18 Plan set the terms for base

salary and incentive sales compensation for sales employees at Oracle. *Id.* The FY18 Plan had two components: (1) the Terms & Conditions document ("T&C"), *see id.* Exh. 1, and (2) the Individual Compensation Agreement ("ICA"), *see id.* Exh. 2. The T&C has a section titled "31. AGREEMENT TO ARBITRATE DISPUTES," ("Arbitration Clause") which includes the following language:

> Employee and Oracle understand and agree that, except as set forth below, any existing or future dispute or claim arising out of or related to Employee's Oracle employment, or the termination of that employment, including but not limited to disputes arising under the Plan, will be resolved by final and binding arbitration and that no other forum for dispute resolution will be available to either party, except as to those claims identified below. The decision of the arbitrator shall be final and binding on both Employee and Oracle and it shall be enforceable by any court having proper jurisdiction.
>
> Arbitration proceedings under this Agreement to Arbitrate Disputes shall be conducted pursuant to the Federal Arbitration Act, and in accordance with the National Rules for the Resolution of Employment Disputes of the American Arbitration Association or the Employment Arbitration Rules and Procedures adopted by Judicial Arbitration & Mediation Services ("JAMS"). Except as set forth below, the arbitrator will have all the powers a judge would have in dealing with any question or dispute that may arise before, during and after the arbitration.

*Id.* Exh. 1. The ICA states:

> I have read and agree to be bound by the FY18 Terms and Conditions, including but not limited to the Agreement to Arbitrate Disputes.

*Id.* Exh. 2.

There is a standardized process by which Oracle employees accept the annual plans. Diaz Decl. ¶ 8. Every fiscal year, sales employees receive an email indicating that the plan is ready and providing instructions to navigate to the Safes Force Planning Tool ("Tool"), which Oracle uses to issue and have employees accept the annual plans. *Id.* Within the Tool, employees are required to scroll through every page of the T&C including the Appendix, which includes the Arbitration Clause. *Id.* The employees then check a box indicating they have reviewed the T&C and accept its terms. *Id.* The Tool then displays the ICA. *Id.* ¶ 9. It requires employees to click a button to electronically sign the FY18 Plan, which includes the T&C and ICA, indicating they accept the terms. *Id.* The Tool stamps the employee's signature and the date on page 2 of the ICA. *Id.*

Lopes signed the ICA on June 14, 2017. *Id.* ¶ 10, Exh. 2.

Lopes filed a complaint in California superior court on July 29, 2020 and a first amended complaint on May 24, 2021. ECF No. 19-1 ("Lee Decl.") ¶ 2, Exhs. A-B. Defendants filed an answer in state court, and they subsequently removed the case to federal court on March 22, 2022. *Id.* ¶ 2; ECF No. 1. On May 16, 2022, Oracle's counsel contacted Lopes requesting arbitration. Lee Decl. ¶ 3, Exh. C. Lopes refused to arbitrate. *Id.*

On May 24, 2022, Defendants filed this motion to compel arbitration. *See* ECF No. 19. Lopes has not opposed the motion.

## II. LEGAL STANDARD

The Federal Arbitration Act ("FAA") applies to arbitration agreements affecting interstate commerce and governs the enforceability and scope of an arbitration clause. *See* 9 U.S.C. §§ 1-402. The FAA embodies a "national policy favoring arbitration and a liberal federal policy favoring arbitration agreements, notwithstanding any state substantive or procedural policies to the contrary." *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 345–46 (2011) (internal quotations and citations omitted). "[A]s a matter of federal law, any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration." *Benson v. Casa de Capri Enters., LLC*, 980 F.3d 1328, 1330 (9th Cir. 2020) (quoting *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24-25 (1983)). A moving party need only prove by a preponderance of the evidence that an agreement to arbitrate the claims exists. *See Bridge Fund Cap. Corp. v. Fastbucks Franchise Corp.*, 622 F.3d 996, 1005 (9th Cir. 2010). "[T]he party resisting arbitration bears the burden of establishing that the arbitration agreement is inapplicable." *Wynn Resorts, Ltd. v. Atl.-Pac. Cap., Inc.*, 497 F. App'x 740, 742 (9th Cir. 2012).

Section 2 of the FAA makes agreements to arbitrate "valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. "Generally, in deciding whether to compel arbitration, a court must determine two 'gateway' issues: (1) whether there is an agreement to arbitrate between the parties; and (2) whether the agreement covers the dispute." *Brennan v. Opus Bank*, 796 F.3d 1125, 1130 (9th Cir. 2015). "If

the response is affirmative on both counts, then the Act requires the court to enforce the arbitration agreement in accordance with its terms." *Chiron Corp. v. Ortho Diagnostic Sys., Inc.*, 207 F.3d 1126, 1130 (9th Cir. 2000).

### III.  DISCUSSION

#### A.  The FAA Applies and the Parties Agreed to Arbitrate.

As a threshold issue, the Court determines whether the FAA applies here. The FAA provides that a "written provision in any . . . contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract . . . shall be valid . . . and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. The FAA applies to arbitration agreements relating to employment. *Circuit City Stores, Inc. v. Adams*, 532 U.S. 105 (2001). Here, the Arbitration Clause is part of the FY18 Plan, which is a compensation agreement between Lopes and Oracle related to his employment. *See* Diaz Decl. ¶ 5. The Court therefore concludes that the Arbitration Clause in the FY18 Plan is subject to the FAA.

The Court must next determine whether the parties agreed to arbitrate. Oracle provided sufficient evidence that Lopes digitally signed the FY18 Plan. Diaz Decl. ¶ 10, Exh. 2. Lopes does not contest that he signed the agreement. Therefore, the parties agreed to arbitrate.

#### B.  Sharum Can Enforce the Agreement.

Lopes brought this lawsuit against both Oracle and Sharum, his manager. *See* FAC. Sharum was not a signatory to Lopes's FY18 Plan—the agreement was between Lopes and Oracle. *See* Diaz Decl. Exhs. 1-2. Because Sharum was an agent of Oracle and Lopes's manager, he is entitled to enforce the arbitration clause between Lopes and Oracle. *See Dryer v. L.A. Rams*, 709 P.2d 826, 834 (Cal. 1985) ("If . . . the individual defendants, though not signatories, were acting as agents for the [company], then they are entitled to the benefit of the arbitration provisions." (citing *Berman v. Dean Witter & Co., Inc.*, 119 Cal. Rptr. 130, 133 (Cal Ct. App. 1975))).

#### C.  The Arbitration Provision is Valid and Enforceable.

Next, the Court looks at whether the arbitration agreement is valid. "[A]rbitration is a

matter of contract," *AT & T Techs., Inc. v. Commc'ns Workers of Am.*, 475 U.S. 643, 648 (1986) (citations omitted), and arbitration agreements "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract," 9 U.S.C. § 2. Such generally applicable contract defenses include fraud, duress, or unconscionability, but not "defenses that apply only to arbitration or that derive their meaning from the fact that an agreement to arbitrate is at issue." *Concepcion*, 563 U.S. at 339. Whether the parties formed an agreement to arbitrate is resolved under "ordinary state-law principles that govern the formation of contracts." *First Options of Chi., Inc. v. Kaplan*, 514 U.S. 938, 944 (1995).

Here, Lopes and Oracle entered into a contract—the FY18 Plan. Because Lopes was employed in California, the Court will apply California contract law. *See Nguyen v. Barnes & Noble Inc.*, 763 F.3d 1171, 1175 (9th Cir. 2014) ("In determining whether a valid arbitration agreement exists, federal courts 'apply ordinary state-law principles that govern the formation of contracts.'" (quoting *Kaplan*, 514 U.S. at 944)); *see also Tompkins v. 23andMe, Inc.*, 840 F.3d 1016, 1024 (9th Cir. 2016) ("[W]e are bound by the California Supreme Court's most recent articulation of its [general unconscionability] standard . . . ."). "Under California law, 'the party opposing arbitration bears the burden of proving any defense, such as unconscionability.'" *Poublon v. C.H. Robinson Co.*, 846 F.3d 1251, 1260 (9th Cir. 2017) (quoting *Pinnacle Museum Tower Ass'n v. Pinnacle Mkt. Dev. (US), LLC*, 282 P.3d 1217, 1224-25 (Cal. 2012)). To establish a defense of unconscionability, "the party opposing arbitration must demonstrate that the contract as a whole or a specific clause in the contract is both procedurally and substantively unconscionable." *Id.* (citing *Sanchez v. Valencia Holding Co., LLC*, 353 P.3d 741, 748-49 (Cal. 2015)). Procedural and substantive unconscionability are looked at on a sliding scale where "the more substantively oppressive the contract term, the less evidence of procedural unconscionability is required to come to the conclusion that the term is unenforceable, and vice versa." *Id.* (quoting *Sanchez*, 353 P.3d at 748).

   **i.** **Procedural Unconscionability**

Procedural unconscionability "focuses on oppression or surprise due to unequal bargaining power" where the oppression "arises from an inequality of bargaining power that results in real negotiation and an absence of meaningful choice." *Poublon*, 846 F.3d at 1261 (internal quotations

1  and citations omitted). "California courts have held that oppression may be established by showing the contract was one of adhesion or by showing from the totality of the circumstances surrounding the negotiation and formation of the contract that it was oppressive." *Id.* (internal quotations and citations omitted).

The Ninth Circuit held that "[t]he threshold inquiry in California's unconscionability analysis is whether the arbitration agreement is adhesive." *Mohamed v. Uber Techs., Inc.*, 848 F.3d 1201, 1211 (9th Cir. 2016) (quoting *Nagrampa v. MailCoups, Inc.*, 469 F.3d 1257, 1281 (9th. Cir. 2006)) (internal quotation marks omitted). An adhesion contract is "a standardized contract, imposed upon the subscribing party without an opportunity to negotiate the terms." *Nagrampa*, 469 F.3d at 1281 (quoting *Flores v. Transam. HomeFirst, Inc.*, 113 Cal. Rptr. 376, 381-82 (Cal. Ct. App. 2001)). But there is no "rule that an adhesion contract is per se unconscionable." *Poublon*, 846 F.3d at 1261.

To answer the threshold inquiry, the Court finds the FY18 Plan is an adhesion contract. The FY18 Plan is a standardized form that is provided to all Oracle sales employees. Diaz Decl. ¶ 5. Oracle presented the standardized agreement to Lopes. *Id.* ¶ 8. It is not clear from the record whether Lopes was allowed to negotiate any terms of the Arbitration Clause, or if he was required to accept it to remain employed. The Court finds that the Arbitration Clause has at least some degree of procedural unconscionability.

But the Court finds the degree of procedural unconscionability is minimal in light of the circumstances surrounding the creation of the contract. Courts have found that "mandatory arbitration agreements offered as a precondition to employment are enforceable provided there is no indication that applicants signed the agreement under duress, were lied to, or otherwise manipulated into signing the agreement." *Snipes v. Dollar Tree Distrib., Inc.*, No. 2:15-cv-00878-MCE-DB, 2019 WL 5830052, at *3 (E.D. Cal. Nov. 7, 2019) (citing *Baltazar v. Forever 21, Inc.*, 367 P.3d 6, 12 (Cal. 2016)); *see also Hermosillo v. Davey Tree Surgery Co.*, No. 18-CV-00393-LHK, 2018 WL 3417505, at *13 (N.D. Cal. July 13, 2018). "[T]he adhesive nature of a contract, without more, would give rise to a low degree of procedural unconscionability at most." *Poublon*, 846 F.3d at 1261-62 (citing *Baltazar*, 367 P.3d at 12). Here, there is no evidence that Lopes signed

6

the agreement under duress or that he was lied to or manipulated during the process. The Court concludes that the arbitration agreement is an adhesion contract with minimal procedural unconscionability. Thus, enforceability turns on whether the arbitration agreement has a high degree of substantive unconscionability.

### ii. Substantive Unconscionability

While "California courts have articulated numerous standards for determining substantive unconscionability," the "central idea is that the unconscionability doctrine is concerned . . . with terms that are unreasonably favorable to the more powerful party." *Poublon*, 846 F.3d at 1261 (internal quotation marks and citations omitted). "Not all one-sided contract provisions are unconscionable." *Id.* (quoting *Sanchez*, 353 P.3d at 749). "In the employment context, if an employee must sign a non-negotiable employment agreement as a condition of employment but there is no other indication of oppression or surprise, then the agreement will be enforceable unless the degree of substantive unconscionability is high." *Id.* (quoting *Serpa v. Cal. Sur. Investigations, Inc.*, 155 Cal. Rptr. 3d 506, 512 (Cal. Ct. App. 2013)) (internal quotations omitted). Here, the terms of the Arbitration Clause are not unreasonably favorable to Oracle. *See* Diaz Decl. Exhs. 1. And there is no evidence of oppression or surprise. Thus, the Court finds that there is no indication of substantive unconscionability. The Court finds the Arbitration Clause demonstrates insufficient unconscionability as to render the agreement unenforceable.

### D. The Arbitration Provision Covers the Claims at Issue.

Once the Court determines that the arbitration agreement is valid, it is left to determine only whether the claims at issue fall within the ambit of that agreement.[1] *See, e.g.*, *Chiron Corp.*

---

[1] The American Arbitration Association ("AAA") rules, which were incorporated in the Arbitration Clause at issue here, are usually applied as a clear and unmistakable delegation to the arbitrator to decide questions related to the scope of the arbitration agreement. *See Henry Schein, Inc. v. Archer & White Sales, Inc.*, 139 S. Ct. 524 (2019); *see also Caremark, LLC v. Chickasaw Nation*, 43 F.4th 1021, 1031 (9th Cir. 2022) ("We have held that 'incorporation of the AAA rules

*v. Ortho Diag. Sys., Inc.*, 207 F.3d 1126, 1131 (9th Cir. 2020) ("[O]ur role is strictly limited to determining arbitrability and enforcing agreements to arbitrate, leaving the merits of the claim and any defenses to the arbitrator." (quoting *Republic of Nicar. v. Standard Fruit Co.*, 937 F.2d 469, 478 (9th Cir. 1991))).

Here, the Arbitration Clause states that it applies to "any existing or future dispute or claim arising out of or related to Employee's Oracle employment, or the termination of that employment." *See* Diaz Decl. Exh. 1.  In his complaint, Lopes brings claims related to incidents that occurred during his employment at Oracle. *See* FAC.  Therefore, Lopes's claims fall within the scope of the Arbitration Clause of the FY18 Plan.

## IV. ORDER

For the foregoing reasons, the Court GRANTS Defendants' motion to compel arbitration. There being no remaining claims outside of arbitration, the entire action is DISMISSED WITHOUT PREJUDICE to filing a later action to confirm or vacate the arbitration award.

**IT IS SO ORDERED.**

Dated:  September 15, 2022

							_____
							BETH LABSON FREEMAN
							United States District Judge

---

constitutes clear and unmistakable evidence that contracting parties agreed to arbitrate arbitrability.'" (quoting *Brennan*, 796 F.3d at 1130)).